I am Joe Harrington. I'm an assistant U.S. attorney in the Eastern District of Washington. That's Spokane. And I'd like to reserve two minutes of my time for rebuttal, if any. These two cases have been consolidated and they arise out of the same facts and circumstances for the underlying criminal conviction as well as the same facts and circumstances during the sentencing proceeding in both of these cases. This is a government's appeal and it where there has been a consistent pattern of smuggling B.C. bud marijuana from Canada into the United States using backpacks. And the issue here is when there is a joint criminal activity, is it appropriate to split the load of marijuana that's been backpacked in by the co-conspirators? Justice, if it's marijuana, it doesn't mean it's joint. That's correct, Your Honor. But you say it's joint activity, and that covers a lot of ground. I mean, that's the whole issue. How joint, I guess, isn't it? That's correct. I'm just trying to define the issue. The issue here for us, at least as I understand it, speaking as one judge, is whether Palafox is properly applied to this case or should be distinguished. And that's the number of the issue, Your Honor. If the Court wants, I can summarize the facts briefly. I think it might help. I mean, it's a close case. It's a government's appeal. So you've got, you know, the appellant's typical burden. So argue however you like. I understand. Just by, with a bird's-eye view and by way of background, the facts are as follows. On May 16th of 2004, Border Patrol agents were surveilling an area around Lake Asuyus, which is a lake that straddles the U.S.-Canadian border outside of Oroville, Washington. And what they observed were three or four individuals heading north towards Canada on what became known as the Smugglers Trail. The Border Patrol agents tried to follow those individuals. It was late at night, and they didn't catch up to them. But they obviously tracked a sign of these individuals. They crossed into Canada. These Border Patrol agents then backpacked the footprints and the sign back to a shed outside of the town of Oroville. And it turned out that shed belonged to an individual by the name of Michael Stockton. He's one of the named co-conspirators in this case. Interestingly enough, the day before, which would have been May 15th of 2004, members of the Royal Canadian Mounted Police were surveilling, doing surveillance activity in and around Vancouver, B.C. They surveilled Michael Stockton, the owner of the shed. In the Vancouver area, they had surveilled him meeting up with another individual, Joseph Trudeau, who is also another named co-conspirator. And they met in the Vancouver area. And it was, again, the next day that these individuals were seen crossing into Canada from Michael Stockton's shed. Both of these defendants, Mr. Menon and Mr. Harris, admitted that they were involved in a prior activity of carrying marijuana, smuggling from Canada back into the United States. And it was involving Joseph Trudeau and Michael Stockton. So about a month later, after these Border Patrol agents observed that activity, June 7th of 2004, Border Patrol agents were again surveilling and watching this smuggler's trail. And they observed seven individuals coming in from the Canadian side of the trail, heading southbound with backpacks on their back. Eventually, those individuals were observed walking right towards Michael Stockton's shed and entering the shed. Border Patrol agents then rushed to the scene. Several individuals were seen running out of Michael Stockton's shed. And Mr. Menon, Mr. Harris, as well as Joseph Trudeau, and others. A search warrant was ultimately obtained. Michael Stockton's shed was searched. Michael Stockton was inside. There were seven duffel bags full of marijuana. Seven duffel bags consisted of 546 packages of marijuana. And the total amount of marijuana was 235 kilograms. Eventually, these defendants, Mr. Menon and Mr. Harris, as well as others, pled guilty to a conspiracy to possess with intent to distribute marijuana. And I understand the defendants stipulated with the government that the total quantity could be considered in sentencing. Am I right? That's correct. In the plea agreement. The district judge rejected that. That's correct. Of course, the district judge, I guess, has a right to do. So as I understood it, the district judge thought Palafox principle would apply. So how do you distinguish Palafox here? There's several bases, Your Honor. And I'm going to talk about four, just the four easy ones. First, these defendants, Mr. Harris and Mr. Menon, pled guilty to a conspiracy. The defendants in Palafox-Maison pled guilty to a possession charge. The conspiracy charge in that case was dismissed. Now, the charge of conspiracy requires at least two parties to conspire. In this case, you have to ask, who did the defendants conspire with? Did they conspire with Mr. Trudeau? Did they conspire with each other? Or did they conspire with Mr. Stockton and all the other individuals who were charged? And it's the government's position that they were conspired together, just as though they had cooperated. And, in fact, they stipulated that they conspired together by bringing in the total quantity. Together. You mean just the two of them? They had to have conspired with someone. The government's position was that they conspired with someone. Well, if it's just the two of them, then you're saying that perhaps you could take the amount just the two of them carried and charge it to each. Is that ...? That's one alternative, Your Honor. That's correct. Well, if they only conspired with each other, that would be the most you could do, wouldn't it? Well, the government's position is, is that the co-conspirators conspired together in total. Clearly... All of them. Oh, okay. All of them. That's what I was asking. All seven. Yes. But not that each of them conspired with the supplier, with the baker of the higher-up guys. Well, the charge was that there was a conspiracy involving persons both known and unknown. And clearly, the known individuals were the ones, the individuals that crossed the Canadian border carrying the 200-plus kilos of marijuana and Mr. Stock. And that's what you're trying to get them to be counted for, right? Yes. Well, how is it different? It's different from Talifox, which, of course, we're bound to apply, because that was a possession case. This is a conspiracy case. Right. And it's different because of a prior, prior event. Correct, Your Honor. This was these defendants' second trip. They had twice been recruited. They had been twice, twice accompanied other individuals smuggling the marijuana. And they twice crossed the border to smuggle the marijuana in. Halifax-Maison was a singular event. Anything in the plea agreement that indicated they cooperated together in taking any action, like scaling a fence, helping each other, or fighting somebody jointly, working together? Or is the record doesn't include that in the plea agreement? The plea agreement does have a factual basis set forth. That's at the record at 17 through 20. And I don't believe there's anything specifically that's set forth, at least in the factual basis of the plea agreement, that talks about, you know, individual things. Do you want to keep some time for rebuttal after the... I do, Your Honor. So the four things, I think the big highlights to distinguish this case from Halifax-Maison, which I would note, I don't think there's a reported decision that's interpreted this issue as Halifax-Maison applies. But this case, the defendants pled to a conspiracy. There was a written plea agreement with a stipulation. This was their second trip. And third or fourth, they were accompanied by the person that recruited them in Canada, Mr. Joseph Trudeau. All those factors are different from and can be distinguished by the Halifax-Maison case. Thank you, Your Honor. Thank you. Now we've got Mr. Cikutovic. Cikutovic, Your Honor. How do you pronounce it? Cikutovic. Mr. Cikutovic. We welcome you and we'll hear your argument. Thank you, Your Honor. And if you please, the Court and Counsel, Mr. Berry filed his brief on behalf of Mr. Harris. The Court allowed me to join his brief because, as indicated by the government, it is the same facts and circumstances. They're identical. Are you presenting the whole argument? Your Honor, the only argument that I have for the Court, and I'm going to defer to my, I guess, co-counsel or similar counsel, is with regards to the conspiracy. The government is correct. You need two people to conspire. However, I would dispute that my client conspired with seven other individuals. I think the conspiracy is between the individual who wants to get the marijuana to the states, and he needs to find somebody to do that. He makes an agreement with one individual on how to do that. He finds other individuals, negotiates differently with each one, and tells them when all to be there. And so, in fact, my client conspired with one individual to come across, and it benefits the head in charge if you don't talk, because then you don't know how much you're being orchestrated. And it also benefits if you don't know a lot. And if you don't know who they are or who the other people are, the less information for the carriers of the marijuana, the better for the individual who is orchestrating it. So I would agree there is a conspiracy, and they did plead to a conspiracy, but the conspiracy is more of a spoke of a wheel than all seven. So, having said that, Your Honor, I would defer to Mr. Berry. All right. Thank you very much, Mr. Cicatopic. Thank you, Counsel. May it please the Court. Opposing Counsel, I'm Hugh Berry representing Trevor Harris. I was the counsel for Mr. Harris at the District Court at sentencing. Your Honors, I will keep my argument brief. I think the brief basically states the defense position. I would begin by saying, for sentencing purposes post-Booker, the standard is reasonableness. Was the facts that he heard, as represented by all the defendants presented before him, was that sentence reasonable? The government relies solely on the guidelines. The quantity presented by them, look at the guidelines. If the judge didn't follow the guidelines, it per se must be reversed. That's the government's position, Your Honors. They have no other argument for why the sentence is unreasonable. There is nothing stated other than the judge should have held them responsible for the entire quantity under the guidelines. If we were satisfied that the government was correct and the guidelines had been incorrectly calculated, maybe offense level or whatever, would we be able to say, well, that doesn't make any difference, it's still a reasonable sentence? Or would we have to say, we don't know whether the sentence would have been the same had the guidelines been properly calculated, so we'll send it back and see what sentence comes up? That's an interesting issue, Your Honor. I would indicate to the Court that based on Booker, based on 18 U.S.C. 3553A and the factors implied therein, there is not a per se unreasonableness as to the sentence indicated, an 18-month sentence under these standards. I guess the argument is, well, the judge should have said he's responsible for everything, but then look at what he carried, one backpack. And under those circumstances, could the judge not have held him responsible for that one backpack, even though the entire conspiracy involved seven different people? I would argue to the Court that the judge could reasonably have found, even in light of the entire conspiracy consisting of everybody, if the Court finds that that is the appropriate criteria, that he could still have sentenced him to 18 months under Booker. I guess one of the questions that sort of lurks in the background here is whether Califax and its gradations are to be invariably questions of law, or whether there's flexibility for the district courts who hear these cases to say, well, I don't really think that he should be tagged with the whole amount, and so I'm going to find the facts this way, and whether there's room for flexibility, because this isn't the only one of these we have on the agenda. Definitely not. And in fact, I think, if I may, Your Honor, the Court didn't just say, well, there's room for flexibility. The Court specifically, and I think there's a detailed, very detailed record of what the Court heard in terms of at least my client's rendition of what occurred, which was uncontroverted from start to finish. The Court had that, in addition to the factual circumstances. This was never controverted by the government. I am assuming, because I don't have the privileged knowledge of what occurred in the other sentencing, but I think there's a reference to the Court saying something to the effect of, you know, I've sentenced two other people, and I've heard the I'm bothered by one thing. We have a plea agreement here which says we were in a conspiracy to import 235 kilograms. The judge won't accept that. Perfectly okay. But he sets aside the plea agreement. Then he finds that both of them had 68 kilograms, that is, 34 and two carats. Where's the factual predicate or the basis for that finding? Your Honor, it's my understanding, and I apologize. Because he's setting aside the 235, so he says, I'm not considering that anymore, right? It may be a matter of semantics. I don't – I wouldn't articulate as such as he's setting aside. He is indicating that based on the facts of this case, based on my understanding of how these specific individuals became involved, based on my understanding of specifically what these individuals were entailed to do, they were responsible for that independent backpack. I think Judge Gould raised an interesting point in terms of, and that's specifically the crux of Palafax Mizzone, the very heart of it. What were these people responsible for doing? Did one of them assist? You know, did one of them hold a flashlight while the other one's going? No. There's no record of that. Because there wasn't. These were just silly individuals, individually paid, didn't know each other until they got off that truck, said, take this backpack, follow. That's Palafax Mizzone. And so therefore, we've – there's a factual basis to finding that each backpack had 34 kilos? Your Honor, I believe under the guidelines, and this is because there was a quandary of facts, and I think this was the reasonable basis. I don't know that on the record there was any measurement of each backpack attributing one bag to each person. So they take the entire quantity, divided it among the individuals. I feel that was quite appropriate, and I believe the guidelines supports when you don't have a distinct knowledge of each, you take the reasonable quantity. My understanding was that there were two trips. Yes, sir. And that – so there's so many backpacks. And it was an estimate. Two trips, and then you can figure out how much each person carried. And I think it was on the line, Your Honor, because when I – excuse my conversion. I think 38 or so would have been approximately almost 70 or 80 pounds per person, which I think it's a stretch to say that anybody could have carried any more. Clearly, it could have been less, because we don't know what the quantity was on the first trip. So actually, without doing a contesting, it would have been actually reasonable to contest, well, we don't know how much was on that first trip, so how can you even quantify that? I think it errs actually towards the defense benefit that this came up, the judge said in reason, I don't know how much was in the first trip. Based on the second trip, I find it reasonable to just presume that it was the same amount of quantity that first trip. But in fact, I think it would have been reasonable for the defense to contest, well, you know what, we don't know how much was there, so frankly, it should be zero and say there was a conspiracy, but we don't know how much. That would have been pretty unreasonable. So in terms of, I would just urge the court or ask the court that please don't assume there was even more, because it was reasonable to assume for the purposes of sentencing under the guidelines when there is no clear knowledge of what that initial quantity was. Is there any case on the power or rule that clarifies the power of the district court to make the factual determination on quantity different from the stipulation? I think I've cited in my brief, Your Honor, not only case law, but also the very guidelines themselves that indicate the court does not have to follow stipulation based on its understanding of the facts. And in this instance, Your Honor, when the court looked at the facts of this case, it felt that providing a single individual or these individuals individually who know nothing about each other, were hired totally separately, the only connection they had was one followed the other behind the other for gosh knows how many miles to a shack. It was not correct to hold them entirely responsible as a conspiracy in the traditional sense. And I would just like to point this out, because I think it needs to be mentioned. We all talk about well, a conspiracy involves two people in agreement. That's not the only elements of a conspiracy. A conspiracy, as the plegarian says, it's the object. What was the object of this conspiracy? There is no evidence that the government can present that says my client had the object of securing and assuring that the entire quantity got across. The only evidence that was presented to the court by the defense as well as the government was that he agreed as an object of his conspiracy with Mr. Trudeau to carry one backpack on each occasion. That is the only thing that can be proven. And it's just the circumstances that they happen to be following each other that then makes this conspiracy, this broader conspiracy argument. So we're not contesting that there wasn't a conspiracy. Obviously there was a conspiracy. He agreed to take the backpack. But the question is was the court appropriate in defining the scope, the foreseeability of that? And that has never been contested. Okay. We thank you for the argument. Thank you, Your Honor. And I think there's a short amount of rebuttal time that Mr. Harrington has. Thank you. I'll be brief. Four points. First, the question is who did these defendants conspire with? Counsel said that there was some person in Canada that they potentially conspired with. I'll note in the excerpt of the record in Mr. Menon's case at page 44, the defendant himself acknowledged that he had been recruited by Joseph Trudeau, a named co-conspirator. In Mr. Harris's excerpt of the record at page 61, again Mr. Trudeau's name is mentioned as going and recruiting the people in Canada. So at the very least, these two individuals conspired with Mr. Trudeau in joint criminal activity when they came across the border on the day they were arrested. And in that, to look at this in the most narrow context, the defendant should be responsible at least for the marijuana that they carried, and at least in the very narrow sense, Mr. Joseph Trudeau. And at the very minimum, the court should have used that calculation to determine the joint activity. Did Trudeau carry a backpack on his trip? He did, Your Honor. He was one of the seven backpacks. Second, with respect to the standard of review, the issue in this case is not reasonableness. The issue here, I believe, is whether the district court appropriately considered the guidelines. And in this case, I think the court has to determine whether the court, the district court, accurately calculated the guidelines to exercise that consideration before the ultimate reasonable sentence was imposed. So I don't think we're talking about a reasonableness standard here in this argument. Third, with respect to the calculation of 34 pounds, the district court analyzed it this way. The court said there were 235-plus kilos of marijuana in seven backpacks. 235 divided by 7 is approximately 34 kilos per backpack, and attributed that to each one of the co-conspirators, and then multiplied it by 2 because this was the second trip for each of these co-conspirators. We're over time, but I know the judge's questioning took you there. So just please try to wrap up in the next few seconds. Thank you, Your Honor. And finally, the fourth point was that the stipulation in this case, I would respectfully submit that there was clearly evidence in the record that showed that these individuals all together smuggled in the 235 kilograms of marijuana. And this is not a case where there were facts that weren't supported by the record, and I think those are the cases that counsel is referring to where a district court rejected the stipulation. Thank you. We appreciate the excellent arguments of counsel. The United States v. Mennon and Harris shall be submitted and
judges: Canby, Gould, Bea